## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DAVID ROBERT BENTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:15-CV-121-NJR-DGW** |
| | ) | |
| **DONALD LINDENBERG, VIRGIL** | ) | |
| **SMITH, KIMBERLY BUTLER,** | ) | |
| **MICHAEL MONJE, and JOHN TROST,** | ) | |
| **M.D.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff David Robert Bentz, an inmate in the Illinois Department of Corrections ("IDOC,") filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). More specifically, in his complaint, Bentz alleges that he was harassed, threatened, and assaulted by correctional officers Donald Lindenberg and Virgil Smith, that these officers, as well as Dr. John Trost, failed to provide medical treatment for his injuries following the assault, and that Lieutenant Michael Monje failed to protect him. After a screening of the complaint pursuant to 28 U.S.C. § 1915A, Bentz was allowed to proceed on the following claims:

> Count One:   Defendants Lindenberg and Smith conspired to retaliate against Bentz for filing grievances and lawsuits by using threats, intimidation, and physical force against him, in violation of the First

Amendment;

Count Two:        Defendants Lindenberg and Smith used excessive force against Bentz on August 29, 2014 and December 10, 2014, in violation of the Eighth Amendment;

Count Three:      Defendants Lindenberg, Smith, Trost, and Doe #1 displayed deliberate indifference toward Bentz's medical needs when they denied his requests for medical care for obvious head injuries following the assault on August 29, 2014, in violation of the Eighth Amendment;

Count Four:       Defendant Monje failed to protect Bentz from an excessive risk of assault, in violation of the Eighth Amendment; and

Count Five:       Defendants Lindenberg and Smith are liable under Illinois tort law for assault and/or battery.

The warden of Menard, Kimberly Butler, was also added as a defendant, but only in her official capacity for purposes of securing injunctive relief (Doc. 8, p. 6).[1] Bentz failed to file an amended complaint identifying John Doe #1, despite being advised to do so by October 23, 2015 (*see* Doc. 52, p. 3). As such, Bentz has failed to properly prosecute his case as to John Doe #1 and, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, this defendant will be dismissed with prejudice. *See Lucien v. Breweur*, 9 F.3d 26, 28 (7th Cir. 1993) (dismissal is a "feeble sanction" if it is without prejudice). The remaining Defendants, Dr. John Trost, Donald Lindenberg, Kimberly Butler, Michael Monje, and Virgil Smith, all filed motions for summary judgment that are now before the Court (Docs. 81 and 94, respectively).

---

[1] The Court takes judicial notice that Jacqueline Lashbrook is currently the warden of Menard. The Clerk is directed to substitute Jacqueline Lashbrook for Kimberly Butler.

After carefully considering the briefs and all of the evidence submitted by the parties, Defendant Trost's Motion for Summary Judgment (Doc. 81) is granted, and Defendants Lindenberg, Butler, Monje, and Smith's Motion for Summary Judgment (Doc. 94) is granted in part and denied in part.

## FACTUAL BACKGROUND

Bentz's claims in this case date back to November 2013 when Bentz asserts he began enduring ongoing and continuous harassment by Defendant Correctional Officers Donald Lindenberg and Virgil Smith (Deposition of Plaintiff David Robert Bentz,[2] Doc. 82-1, p. 14). Bentz, unable to cite specific occurrences, testified generally that Defendant Lindenberg threatened to "beat his ass" on a daily basis, and Defendant Smith tried to incite him or flip him off due to Bentz's filing lawsuits (*Id.*).

This harassment seemingly culminated on August 29, 2014, when Bentz contends he was assaulted by Defendants Lindenberg and Smith (*Id.* at pp. 15-16). According to Bentz, this assault transpired in the healthcare unit at Menard while Bentz was waiting on a bench outside of the lab room to be seen by Defendant Dr. Trost for injuries sustained to the left side of his head and neck in a separate assault that occurred on May 11, 2014 (*Id.* at pp. 6, 17). More specifically, on August 29, 2014, after Defendant

---

[2] In his response to Defendants Butler, Lindenberg, Monje, and Smith's Motion for Summary Judgment, Bentz includes as additional material fact that he reserved his signature on the transcript of the deposition in order to proofread the transcript and did not waive this right, but that he was denied the right to "read and sign" the transcript (Doc. 143, p. 3). While Bentz did reserve his signature, the Court advises Bentz that such reservation has no effect on the use of his transcript as evidence before the Court. First, Bentz clearly indicated at his deposition that he had received prior notice. Moreover, Bentz fails to specify any inaccuracy in the transcript of the deposition, and the Court Reporter has attested to the accuracy of the transcript. As such, the Court has no reason to doubt its accuracy, and the deposition appears to comport with Federal Rule of Civil Procedure 30. For these reasons, the Court finds that Bentz's reservation of signature has no effect on the evidentiary value of his deposition testimony.

Lindenberg assaulted another inmate in the lab room, he came to the bench where Bentz was seated, asked Bentz what he was looking at, and then proceeded to punch Bentz in the chest, grab him by the throat, and drag Bentz outside of the healthcare unit (*Id.* at p. 21). As Defendant Lindenberg began dragging Bentz by the throat, Defendant Smith assisted, and the two pushed and shoved Bentz down the hall, outside the healthcare unit, causing Bentz to hit his head on various objects, including a crank box (*Id.* pp. 21-24). Once Bentz was outside of the healthcare unit, Defendant Smith retreated back, and Defendant Lindenberg proceeded to hit Bentz's head on the bars in "the flag" area (*Id.* at p. 26). Defendant Lindenberg then let Bentz go and, as Bentz proceeded down the stairs to his cell, he told Defendant Lindenberg that he wanted to see someone for medical care (*Id.*). Bentz never spoke to Defendant Smith on the date of the assault (*Id.*).

Following the assault on August 29, 2014, Bentz suffered pain in his neck, and the right temple area of his head was bruised and red (Doc. 82-1, p. 26). Bentz also asserts that the injuries sustained in the August 2014 assault re-aggravated injuries sustained in the May 2014 assault, as the injuries were inflicted on the left side of Bentz's head, neck, and shoulder (*Id.* at pp. 4-6).

With regard to his medical treatment, Bentz complains that Defendant Dr. Trost rendered care for the injuries sustained in the May assault, but failed to provide necessary care for the injuries sustained in the August assault (*see id.* at pp. 4, 7). Bentz asserts that he was examined by Defendant Dr. Trost on October 3, 2014, and Defendant Dr. Trost noted Bentz's complaints of left neck pain, swelling, and weakness since May 2014 (*Id.* at p. 7; *see* Bentz's Medical Records, Doc. 82-3, p. 4).

Bentz also complained about the injuries sustained in the August 2014 incident; however, there is no notation regarding his complaints in Bentz's medical records (Doc. 82-1, p. 7; *see* Doc. 82-3, p. 4). While there are disputes as to what occurred at this examination, the Court must construe the facts in Bentz's favor, because he is the non-movant. *See Chaib v. Geo Group, Inc.*, 819 F.3d 337, 341 (7th Cir. 2016) (citations omitted). At his deposition, Bentz testified that Defendant Dr. Trost "didn't really examine anything," but indicated that Dr. Trost looked at both sides of his neck, visually examined him,[3] prescribed Ibuprofen, and scheduled him for an x-ray of his neck (Doc. 82-1, pp. 7-8). Defendant Dr. Trost then ordered that he follow up in two weeks (*Id.* at p. 7; *see* Doc. 82-3, p. 4). Bentz complains that Defendant Dr. Trost ignored his jaw issues after he explained that it had been popping and causing him pain (Doc. 82-1, p. 8). Per Defendant Dr. Trost's orders, Bentz received an x-ray of his cervical spine on October 10, 2014, which did not reveal any abnormalities (*Id.* at p. 9; *see* Doc. 82-3, p. 17). Bentz was not examined by Defendant Dr. Trost again during the relevant time period regarding his August 2014 injuries; however, Bentz was regularly examined by other medical providers throughout 2014 and 2015 for other conditions (*see generally* Doc. 82-3).

---

[3] In his response to Defendant Trost's Motion for Summary Judgment, Bentz included an affidavit indicating that "Defendant Trost did no kind of examination of this Plaintiff at all on October 3, 2014, visual, physical, or other" (Doc. 109, p. 74). To the extent that this affidavit contradicts Bentz's sworn deposition testimony that Defendant Trost looked at both sides of his neck and visually examined him, the Court disregards this contradictory statement. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.") (citing *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)).

Bentz had another run-in with Defendant Lindenberg on December 10, 2014, while he was exiting the healthcare area (Doc. 82-1, p. 27). During this encounter, Defendant Lindenberg grabbed Bentz's head and tried to slam it into the bars in the "flag" area outside of the healthcare unit (*Id*.).

Bentz asserts that he informed Defendant Monje, a lieutenant in internal affairs, about Defendant Lindenberg's harassment and threats to "beat his ass" on June 27, 2014, prior to the alleged assaults, but that his complaints were ignored (Doc. 82-1, p. 28; Doc. 143, p. 10). Bentz also contends that he wrote grievances regarding the harassment and threats being made by Defendant Lindenberg. These grievances were forwarded to internal affairs and would have gone to Defendant Monje, because they involved staff assaults (Doc. 82-1, p. 29).

Defendants' motions for summary judgment are now ripe for review. The Court notes that Defendants Lindenberg and Smith do not seek judgment as a matter of law as to Counts 2 or 5, Bentz's claim of excessive force and his Illinois state law claim for assault and/or battery. As such, these claims will not be discussed further.

LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc., v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that

Page 6 of 26

no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress &Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers et. al*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## DISCUSSION

### I.     Count 1: Conspiracy to retaliate in violation of the First Amendment

While civil conspiracy claims are cognizable under § 1983, *see Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983), conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

Here, Bentz argues that Defendants Lindenberg and Smith conspired to retaliate against him for filing grievances and lawsuits by threatening him, intimidating him, and

ultimately assaulting him, in violation of the First Amendment. In order to succeed on his conspiracy claim, Bentz must demonstrate: (1) Defendants Lindenberg and Smith had an express or implied agreement to deprive him of his constitutional rights, and (2) he was deprived of his constitutional rights by Defendants' overt actions in furtherance of the agreement. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir. 1998)).

Defendants argue that Bentz's conspiracy claim fails at the outset, because there can be no conspiracy among state actors. Furthermore, Defendants assert, Bentz cannot establish any conspiracy, and the evidence does not demonstrate that they engaged in retaliatory conduct protected by the First Amendment.

The Court readily rejects Defendants' argument that there can be no conspiracy among state actors. The case relied on by Defendants, *Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009), concerns a conspiracy claim pleaded pursuant to 42 U.S.C. § 1985(3). That statute has not been invoked here and, as Defendants have not provided an argument urging the Court to apply the standards in § 1985(3) to § 1983, the Court finds *Fairley* unavailing. As such, the Court goes on to consider whether there is sufficient evidence for a reasonable jury to conclude Defendants conspired to retaliate against Bentz.

"Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative." *Beaman*, 776 F.3d at 511 (citing *Williams v. Seriff*, 342 F.3d 774, 785 (7th Cir. 2003). Moreover, although the Seventh Circuit has directed that "a conspiracy claim cannot survive summary judgment if the allegations are vague,

conclusionary, and include no overt acts reasonably related to the promotion of the alleged conspiracy," *Amudsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (internal quotation marks omitted), "[s]ummary judgment should not be granted if there is evidence from which a reasonable jury could infer the existence of a conspiracy," *Beaman*, 776 F.3d at 510-11.

With regard to Bentz's conspiracy claim, the evidence, when viewed in the light most favorable to Bentz, establishes that in November 2013 Defendants Lindenberg and Smith began harassing and threatening Bentz on a regular basis. More specifically, Defendant Lindenberg told Bentz he wanted to "kick his ass," and Defendant Smith would "incite [him] or flip [him] off or make some sort of remark" to Bentz. Subsequently, on August 29, 2014, Defendants assaulted Bentz during an incident in the healthcare unit. Although Bentz testified that he has no idea why Defendant Smith assaulted him, he indicated that this defendant would not have had any other reason to assault him aside from having knowledge that Bentz is a litigator and had previously sued Defendant Lindenberg (Doc. 82-1, p. 31). As described by Bentz, Defendant Smith was "acting on the action of Lindenberg's retaliation" (*Id.*).

This evidence, even when viewed in Bentz's favor, is insufficient to demonstrate a conspiracy between Defendants Lindenberg and Smith to retaliate against Bentz. Indeed, the only evidence of Defendants acting in concert with, or having any interaction with one another, was when they both assaulted Bentz in the healthcare unit on August 29, 2014. There is no indication that this action was the result of any agreement between these defendants. Notably, Bentz even admits that he has "no ideas [*sic*]" why Defendant

Smith assaulted him (*Id.*). Further, Bentz only opined that they were acting in concert because he wrote "them up for those incidents, making threats … and threatening to beat [his] ass" (*Id.* at p. 16). As such, any suggestion that Defendants conspired to retaliate against Bentz is pure conjecture based entirely on speculation and is insufficient to withstand Defendants' motion for summary judgment on the conspiracy claim in Count 1.

This finding, however, does not end the Court's analysis with regard to Count 1. As mentioned above, conspiracy is not an independent basis of liability in § 1983 actions. *See Smith*, 550 F.3d at 617 (7th Cir. 2008) (citation omitted). Although not specifically indicated in the Court's screening order, Count 1 also necessarily includes a retaliation claim against both Defendants Lindenberg and Smith, as there could be no allegation of conspiracy without the intent to deny Bentz of his constitutional rights. *See Hill*, 93 F.3d at 422. As such, although the Court finds that no reasonable jury could conclude that Defendants conspired to retaliate against Bentz, the Court must consider whether Defendants, individually, retaliated against Bentz.[4]

### A.    Retaliation claim against Defendant Lindenberg

In his complaint, Bentz alleges that Defendant Lindenberg retaliated against him for filing grievances and lawsuits by way of threatening, intimidating and assaulting him. It is well settled that a prison official who takes action in retaliation for a prisoner's

---

[4] While the Court's screening order does not specify a separate claim of retaliation against Defendant Lindenberg and Defendant Smith, it finds that the conspiracy claim in Count 1 implies these claims and, moreover, Defendants briefed this issue in their motion for summary judgment, so Defendants are not prejudiced by the Court's construction of the screening order.

exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). The Seventh Circuit has articulated that for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the Seventh Circuit has held that the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a *prima facie* case, the plaintiff must produce evidence that his speech was at least a motivating factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.*

Defendant Lindenberg asserts that Bentz's retaliation claim must fail, because there is no evidence linking Defendant's adverse actions to Bentz's filing of grievances and lawsuits and, in any event, there is no evidence that Defendant's conduct dissuaded Bentz from engaging in any First Amendment activities.

Bentz's evidence regarding Defendant Lindenberg's alleged retaliatory actions is nebulous. In the light most favorable to Bentz, however, the Court discerns the following: Defendant Lindenberg threatened Bentz on a daily basis starting in November 2013. During this time, Defendant Lindenberg would make comments about lawsuits Bentz filed against him. In Bentz's words, Defendant Lindenberg "specifically has made points because of [Bentz's] prior litigations [*sic*] against [Defendant Lindenberg]" (Doc. 82-1, p. 31). Subsequently, Defendant Lindenberg assaulted Bentz on August 29, 2014, while Bentz was in the healthcare unit. When Defendant Lindenberg forcibly removed Bentz from the healthcare unit by his throat, he asked Bentz if he wanted "some more," Bentz told him no, then Defendant Lindenberg let Bentz go and told Bentz to go back to his cell (*Id.* at p. 26). Defendant then attempted to attack Bentz on December 10, 2014, when he tried to push Bentz's head into the bars outside of the healthcare unit. There was no verbal interaction during this altercation.

This evidence is insufficient for a reasonable jury to conclude that Defendant Lindenberg took action that was likely to deter Bentz's First Amendment activity or that any adverse actions taken by this Defendant against Bentz was motivated by Bentz's First Amendment activity. First, with regard to the verbal threats made by Defendant Lindenberg, it is well settled that "simple verbal harassment" does not deprive a prisoner of a protected liberty interest. *DeWalt*, 224 F.3d at 612 (citations omitted). While the Seventh Circuit's decision in *Beal v. Foster* makes clear that not all harassment in the prison context should necessarily be dismissed outright on this basis, the Court clarified that what is meant by "simple" is "fleeting," in that verbal harassment is not beyond

constitutional boundaries if it is "too limited to have an impact." 803 F.3d 356, 358 (7th Cir. 2015).

Here, there is no evidence in the record to support a finding that the verbal harassment endured by Bentz from Defendant Lindenberg was more than "simple," in that it certainly did not have an impact on Bentz or affect his behavior. As Defendant Lindenberg points out in his brief in support of summary judgment, the threats Bentz alleges were made by this Defendant did not deter Bentz, because he continued to file grievances and subsequent lawsuits following the alleged harassment.

While this point is well-taken, it is not the basis for the Court's decision on this issue. Rather, the Court relies on the glaring dearth of evidence that Bentz's First Amendment activity (i.e. filing grievances and lawsuits) was a "motivating factor" behind Defendant Lindenberg's actions. Although Bentz has indicated that Defendant Lindenberg made comments about lawsuits filed against him, there is no specificity regarding what these comments entailed, when these comments were made, or if these comments were made in conjunction with any threats. Moreover, and importantly, while Bentz provided specific, detailed testimony concerning the assaults he endured on August 29, 2014, and December 10, 2014, at the hands of Defendant Lindenberg, there is no testimony or other evidence to establish that these attacks were incited by Bentz's First Amendment activity. Rather, these assaults appear to the Court to be arbitrary acts (and, as such, Bentz is proceeding in this matter on both an excessive force and state law assault and battery claim against Defendant Lindenberg). As such, no reasonable jury

could conclude that the actions taken by Defendant Lindenberg that form the basis of Bentz's complaints against him were motivated by retaliation.

### B.     Retaliation claim against Defendant Smith

The evidence to support a retaliation claim against Defendant Smith is more scant than the evidence against Defendant Lindenberg; as such, the Court's consideration of this claim is abbreviated, because no reasonable jury could conclude that the actions taken by Defendant Smith were motivated by Bentz's First Amendment activity.

The evidence, when viewed in a light most favorable to Bentz, establishes that this defendant regularly harassed Bentz starting in November 2013 by way of making obscene gestures or remarks to "incite" Bentz. This defendant would make general comments about Bentz filing lawsuits against staff members. The record is bereft of any specifics regarding these comments, including when they were made, what was said, and whether the statements were made in conjunction with any threat. Further, the record does not include any evidence tending to show that the actions taken by Defendant Smith on August 29, 2014, in his assault of Bentz were related to Bentz's filing of lawsuits and grievances. As such, there is simply no evidence for the Court to find that the actions taken by Defendant Smith and complained about by Bentz were motivated by retaliation.

For the reasons set forth above, Defendants Lindenberg and Smith are entitled to judgment as a matter of law as to Count 1. The Court need not consider Defendants' argument regarding qualified immunity with regard to Count 1, because the Court has already determined that their actions did not violate Bentz's constitutional rights.

## II.   Count 3: Deliberate indifference claim against Defendants Lindenberg, Smith, and Trost

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Bentz must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner also must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction

of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Bentz sets forth a deliberate indifference claim against Defendants Lindenberg, Smith, and Trost for their purported failure to either secure or render adequate medical treatment for his obvious head injuries following the assault on August 29, 2014. Notably, Defendants do not dispute that Bentz's alleged injury following the August 2014 attack could be considered a serious medical need. As no defendant has set forth an argument that the evidence fails to meet the first requirement, the Court finds the evidence sufficient to make such a showing and only considers whether the defendants were deliberately indifferent to Bentz's medical condition. The Court considers this claim against each defendant individually, as set forth below.

### A.   Defendant Lindenberg

Defendant Lindenberg argues he is entitled to judgment as a matter of law on Bentz's deliberate indifference claim, because Bentz received medical treatment for his alleged injuries and, as a non-medical prison official, he is entitled to rely on the opinions and treatment of medical professionals. This argument is unavailing.

While it is well settled that a non-medical prison official will generally be justified in believing that a prisoner is in capable hands if he is under the care of medical experts, thereby relieving the official of liability for the care, such limitation on liability is only available if the non-medical prison official does not ignore the prisoner's complaints entirely. *See Hayes*, 546 F.3d at 527; *see also Greeno*, 414 F.3d at 656. In this instance, the evidence, when viewed in Bentz's favor, establishes that Defendant Lindenberg ignored Bentz's request for medical treatment after he assaulted him and inflicted an obvious head injury on August 29, 2014. While Bentz was ultimately seen by medical personnel, there is no indication that Defendant Lindenberg took any steps to secure Bentz care on the date of the incident. Thus, a reasonable jury could find that Defendant Lindenberg knew of a serious risk of harm to Bentz and disregarded this risk in failing to address Bentz's requests for medical treatment. Defendant Lindenberg is not entitled to judgment as a matter of law on Count 3.

Further, Defendant Lindenberg is not entitled to qualified immunity on this claim, because it is clearly established law that a serious medical need arises when the failure to treat a prisoner "could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008); *see also*

*Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 2005). Because a jury could find that Defendant Lindenberg's failure to secure medical treatment for obvious injuries led to the wanton and unnecessary infliction of pain, in violation of Bentz's Eighth Amendment rights, Defendant Lindenberg is not entitled to qualified immunity.

### B.    Defendant Smith

Defendant Smith sets forth the same argument as Defendant Lindenberg on this claim, arguing he is entitled to judgment as a matter of law because Bentz received medical treatment for his alleged injuries and, as a non-medical prison official, he is entitled to rely on the opinions and treatment of medical professionals. Once again, this argument fails. Bentz was not in the hands of medical experts at the time the injuries he complains of were inflicted and, while Bentz did not specifically ask Defendant Smith for medical care, the evidence, when viewed in the light most favorable to Bentz, indicates that Bentz suffered from obvious injuries that required medical attention. As such, Defendant Smith's failure to secure medical treatment for Bentz immediately following the assault on August 29, 2014, may be found to constitute deliberate indifference by a reasonable jury. Thus, Defendant Smith is not entitled to judgment as a matter of law as to Count 3.

Further, Defendant Smith is not entitled to qualified immunity on this claim for the same reasons articulated as to Defendant Lindenberg. A jury could find that Defendant Smith's failure to secure medical treatment for Bentz's obvious injuries violated clearly established law. Thus, Defendant Smith is not protected by qualified immunity.

C.     **Defendant Dr. Trost**

With respect to Defendant Dr. Trost, the evidence viewed in Bentz's favor establishes that he examined Bentz on October 3, 2014. Bentz blames Defendant Dr. Trost for the significant delay between the assault on August 29, 2014, and his examination, because Bentz apparently was told by correctional officers that Defendant Dr. Trost kept cancelling his scheduled appointments. But Bentz's medical records tell a different story. The records indicate that Bentz was scheduled for the MD call line on September 9, 2014, but the facility was on level one lockdown; he was scheduled again on September 12, 2014, but no physician was on duty; and, he was on the schedule for September 26, 2014, but the facility was again on lockdown and only emergency medical care was available (Affidavit of John Trost, M.D., Doc. 82-2, ¶ 8; *see* Doc. 82-3, pp. 2-3). Defendant Dr. Trost attests that the movement of inmates during lockdown is not within his control (Doc. 82-2, ¶ 8).

According to Bentz, when Defendant Dr. Trost saw him on October 3, 2014, he did not conduct a physical exam, but only looked at both sides of Bentz's neck. After this visual exam, Dr. Trost prescribed Ibuprofen and scheduled Bentz for a neck x-ray. Defendant Dr. Trost noted that Bentz should be seen for a follow-up examination in two weeks; however, no such follow-up examination occurred; it was neither scheduled by medical personnel nor requested by Bentz through a sick call request. The x-ray of Bentz's cervical spine (i.e., his neck) was completed on October 10, 2014, and showed good alignment of the cervical vertebrae, no loss of vertebral body height, no disc space narrowing and, more generally, no abnormalities (Doc. 82-2, ¶¶ 15-16). Bentz was not

seen by Defendant Dr. Trost again for an evaluation of the injuries sustained in the August 29, 2014 assault.

Bentz contends that the treatment provided by Defendant Dr. Trost was inadequate to address the injuries sustained to the right side of his head and neck on August 29, 2014, because Defendant Dr. Trost failed to examine the right side of his head to diagnose a possible skull or jaw fracture or other injury, failed to see him prior to October 3, 2014, and failed to follow-up with Bentz after the October 3, 2014 exam.

As to Bentz's argument that the treatment rendered by Defendant Dr. Trost on October 3, 2014 was inadequate to address his August 29, 2014 injuries, the Court finds this argument unconvincing. First, Bentz acknowledges that Defendant Dr. Trost conducted a visual examination of both sides of Bentz's neck and ordered prescription-strength Ibuprofen and a cervical spine x-ray. This treatment regimen, even if meant to evaluate, diagnose, and treat Bentz's injury to the left side of his head and neck, would have been equally relevant to evaluate, diagnose, and treat Bentz's injury to the right-side of his head and neck (*See* Doc. 82-2, ¶¶ 12-13). As attested to by Defendant Dr. Trost, "[his] exam would have been the same had [he] been aware that Mr. Bentz also had right sided neck pain" (*Id.* at ¶ 12).

Moreover, while Bentz clearly disagrees with the treatment rendered by Defendant Dr. Trost on October 3, 2014, it is well established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was 'blatantly inappropriate.'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654). Making such a

showing is not easy, as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

Here, there is simply no evidence that Defendant Dr. Trost's prescribed course of treatment was "blatantly inappropriate" to address the injuries complained of. Rather, the evidence demonstrates that Defendant Dr. Trost evaluated Bentz and, using his medical judgment, provided a course of treatment he believed to be appropriate, including prescribing pain medication and ordering a cervical spine x-ray. Although Bentz apparently believes a different course of treatment would have been more appropriate, the Court finds that Defendant Dr. Trost's treatment regimen was grounded in professional judgment and was reasonable. *See Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008).

With regard to Bentz's complaints concerning the delay between the time of the assault (on August 29, 2014) and his examination by Defendant Dr. Trost (on October 3, 2014), the Court finds that no reasonable jury could conclude that any delay was attributable to Defendant Dr. Trost. Specifically, the only evidence that Defendant Dr. Trost had any involvement in cancelling Bentz's scheduled appointments is Bentz's

deposition testimony that correctional officers told him Dr. Trost kept canceling the appointments (Doc. 82-1, p. 6). There is no evidence to substantiate what the correctional officers told Bentz, and Defendant Dr. Trost's affidavit directly contradicts this testimony and is supported by notations in Bentz's medical records. As such, the Court cannot find that Defendant Dr. Trost's treatment of Bentz evidenced deliberate indifference on this basis. *See Shields v. Illinois Dep't. of Corr.*, 746 F.3d 782, 797 (7th Cir. 2014) (finding that defendant-physicians were not deliberately indifferent as there was no evidence they had any involvement in making a mistaken referral).

Finally, the Court finds that Defendant Dr. Trost's failure to ensure Bentz was seen on a follow-up visit within two weeks of his October 3, 2014 appointment was not deliberate indifference. First, Bentz has presented no evidence that Defendant Dr. Trost was personally responsible for scheduling Bentz for a follow-up exam. Indeed, Defendant Dr. Trost attested that he does not personally schedule inmates for appointments (Doc. 82-2, ¶ 19), and Bentz could have put in a sick-call request to see Defendant Dr. Trost if he was still suffering from worrisome symptoms. Moreover, there is no evidence to establish that Bentz suffered any injury due to not being seen for a follow-up exam.

For these reasons, Defendant Dr. Trost is entitled to judgment as a matter of law as to Count 3. The Court need not consider Defendant Dr. Trost's argument regarding qualified immunity, because the Court has already determined that his actions did not violate Bentz's constitutional rights.

III.     **Count 4: Eighth Amendment failure to protect claim against Defendant Monje**

Although the Constitution "does not mandate comfortable prisons," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), "neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832. "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)). Similarly, the Eighth Amendment imposes duties on prison officials who must provide humane conditions of confinement and must "take reasonable measures to guarantee the safety of inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

In order to state a Section 1983 claim against prison officials for failure to protect, a plaintiff must establish: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the defendants acted with "deliberate indifference" to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). In other words, Bentz must demonstrate that defendants had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991)).

Here, Bentz asserts that Defendant Monje failed to protect him from Defendant Lindenberg as he advised this defendant of the harassment and threats made by Defendant Lindenberg prior to the assaults on August 29, 2014, and December 10, 2014,

but Defendant Monje failed to act on this information. When viewed in Bentz's favor, the evidence to support this claim establishes that Bentz saw Defendant Monje on June 27, 2014, regarding another issue and, at this time, informed Defendant Monje that Defendant Lindenberg was making threats to beat his ass for filing grievances and lawsuits. Defendant Monje ignored Bentz's complaints concerning this issue and, ultimately, Defendant Lindenberg acted on his threats and attacked him on August 29, 2014, and December 10, 2014.

This evidence is simply too vague to withstand Defendant Monje's motion for summary judgment. The Seventh Circuit has remarked that "[c]omplaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that a prisoner was in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480-81 (7th Cir. 2015) (citations omitted). Rather, complaints that identify "a specific, credible, imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Id.* at 481. Here, Bentz has provided no specifics regarding the complaints made to Defendant Monje. As such, the Court finds that Defendant Monje could not have been notified of a "specific, credible, imminent risk of serious harm." Accordingly, Defendant Monje is entitled to judgment as a matter of law as to Count 4. The Court need not consider Defendant Monje's argument regarding qualified immunity since his actions did not violate Bentz's constitutional rights.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendant Dr. Trost (Doc. 81) is **GRANTED**, and the Motion for Summary Judgment (Partial) filed by Defendants Lindenberg, Butler, Monje, and Smith (Doc. 94) is **GRANTED in part and DENIED in part**. Count 1 of the Complaint is **DISMISSED with prejudice**; Count 3 as against Defendants Dr. Trost and John Doe #1 is **DISMISSED with prejudice**; and Count 4 is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Dr. Trost and Defendant Monje and against Plaintiff at the close of this case.

Following the entry of this Order, Plaintiff David Robert Bentz is proceeding on the following claims:

Count 2:    Defendants Lindenberg and Smith used excessive force against Plaintiff in violation of the Eighth Amendment;

Count 3:    Defendants Lindenberg and Smith displayed deliberate indifference toward Bentz's medical needs when they denied his requests for medical care for obvious head injuries following the assault on August 29, 2014, in violation of the Eighth Amendment; and

Count 5:    Defendants Lindenberg and Smith are liable under Illinois tort law for assault and/or battery.

Finally, the Clerk of Court shall **SUBSTITUTE** Jacqueline Lashbrook for Defendant Kimberly Butler. Defendant Lashbrook remains a defendant in this matter in her official capacity only to secure any injunctive relief.

**IT IS SO ORDERED.**

**DATED:**   **March 27, 2017**

**NANCY J. ROSENSTENGEL**
**United States District Judge**